COURT OF APPEALS OF VIRGINIA

PUBLISHED

Present:   Judges O'Brien, Malveaux and Fulton
Argued at Richmond, Virginia


SETH G. HEALD, ET AL.

v.        Record No. 1485-22-2

RAPPAHANNOCK ELECTRIC COOPERATIVE

OPINION BY
JUDGE MARY BENNETT MALVEAUX
FEBRUARY 13, 2024

FROM THE CIRCUIT COURT OF SPOTSYLVANIA COUNTY
Joseph J. Ellis, Judge Designate

Evan Dimond Johns (Isak Howell; Appalachian Mountain
Advocates, on briefs), for appellants.

Andrew P. Sherrod (John R. Walk; Randolph Critzer, Jr.; Charles W.
Payne, Jr.; Hirschler Fleischer, A Professional Corporation, on brief),
for appellee.


This appeal arises from a dispute over changes three members of Rappahannock Electric

Cooperative ("REC") sought to make to REC's bylaws.  On appeal, Seth G. Heald, Michael F.

Murphy, and John C. Levasseur (collectively, "the member group") argue that the Spotsylvania

County Circuit Court ("the circuit court") erred by entering summary judgment in favor of REC,

because their proposed bylaws comport with the law and they have a statutory right to propose

such bylaws.  REC contends that the circuit court erred in various rulings when it granted its

motion for summary judgment.  For the following reasons, we affirm in part, and reverse in part.

I.  BACKGROUND

A.  REC and the Relevant Statutory Framework

REC is a public service energy company and nonstock cooperative governed primarily by

the Virginia Utility Consumer Services Cooperatives Act ("the Utility Cooperatives Act").  *See*

Code §§ 56-231.15 to -231.37.  The articles of incorporation for a cooperative established under

the Utility Cooperatives Act may be amended through the processes set out in the Virginia Nonstock Corporation Act[1] ("the Nonstock Act") and the Virginia Stock Corporation Act[2] ("the Stock Act"). Code § 56-231.22. In addition, the Utility Cooperatives Act provides that "[a]ll of the provisions" of the Stock Act and the Nonstock Act are applicable to cooperatives formed under the Utility Cooperatives Act "insofar as [they are] not inconsistent with [the Utility Cooperatives Act]." Code § 56-231.19.

The Utility Cooperatives Act requires a cooperative to have a member-elected board of directors comprised of five or more members. Code § 56-231.28. The board makes up the governing body of the cooperative and has the power to appoint officers and fix the compensation of board members. *Id.* Additionally, the board

> shall have power to do all things necessary or incidental in conducting the business of the cooperative, including, but not limited to the power:
>
> 1. . . . [T]o adopt and amend bylaws for the management and regulation of the affairs of the cooperative, subject, however, to the right of the members to alter or repeal such bylaws. . . .
>
> 2. To appoint agents and employees and to fix their compensation and the compensation of the officers of the cooperative.
>
> 3. To execute all instruments.
>
> 4. To make its own rules and regulations as to its procedure.

Code § 56-231.29. The Utility Cooperatives Act further provides, in pertinent part, that

> [t]he bylaws of a cooperative may make provisions, not inconsistent with law or its articles of incorporation, regulating the . . . number, times and manner of choosing, qualifications, terms of office, official designations, powers, duties and compensation of its officers and directors; . . . the date of the annual meeting and the giving of notice thereof and the holding of

---

[1] *See* Code §§ 13.1-801 to -980.

[2] *See* Code §§ 13.1-601 to -800.

special meetings and the giving of notice thereof; . . . and regular and special meetings of the board and the giving of notice thereof.

Code § 56-231.29(1).

The Utility Cooperatives Act's provisions are to be "liberally construed," and its "enumeration of any object, purpose, power, manner, method or thing shall not be deemed to exclude like or similar objects, purposes, powers, manners, methods or things." Code § 56-231.36. Additionally, "any provisions of other laws in conflict with the provisions of [the Utility Cooperatives Act] shall not apply to cooperatives operating" under the Utility Cooperatives Act. *Id.* The Utility Cooperatives Act also provides that "[a]ny object, purpose, power, manner, method or thing which is not specifically prohibited is permitted." *Id.*

Relevant here, REC's Articles of Restatement[3] adopt the language of Code § 56-231.29(1) in providing that "[t]he board of directors shall have the power to adopt and amend bylaws for the management and regulation of the affairs of [REC], subject to the right of the members to alter or repeal such bylaws." In turn, REC's bylaws specify the process by which the bylaws may be amended, altered, or repealed. First, as applicable, either members or the board of directors must provide a "[w]ritten submission to the Secretary of the Cooperative of clear and concise language regarding the proposed bylaws alteration, amendment or repeal." Second, if members desire to alter or repeal bylaws they must submit "a written petition in a form approved and provided by the Cooperative" that includes signatures of not less than 500 members. Third, the bylaws require that "[a]ll proposed alterations or amendments to or repeal of the Bylaws shall be in accordance with applicable state code, the Cooperative Articles of Incorporation and these Bylaws." Fourth, the bylaws specify that once the preceding requirements have been met, "the Board of Directors will prepare and provide the form of the

---

[3] REC's articles of incorporation are denominated its "Articles of Restatement."

- 3 -

final submission for vote by the membership or the Board of Directors, as applicable and described [in the bylaws]."

## B. Factual and Procedural Background

In April 2018, the member group submitted to the Secretary of REC a number of "proposed amendments" to REC's bylaws that they wanted to submit to the cooperative's members for a vote. The first proposal sought to give REC's members greater access to the cooperative's board meetings.[4] The second proposal sought to add language to the section of REC's bylaws that governs proxy votes.[5] Specifically, the proffered language would require

---

[4] The circuit court's rulings with respect to the member group's proposed bylaw provision for "open meetings" of REC's Board are not at issue in this appeal.

[5] Article IV, Section 2 of REC's bylaws provided, in pertinent part, that in elections for board members, each cooperative member

> shall have the right to vote for the duly nominated candidate of their choice in person at the annual meeting or upon a proxy form caused to be prepared by the Board . . . wherein is listed the name of each qualified candidate.

The member group's proposed proxy vote bylaw change would have added the following language to Article IV, Section 2:

> The proxy form used to elect directors at the annual meeting must be signed by the Cooperative member to be considered valid and counted for any purpose. (A signature of one member is valid in the case of joint memberships.)

> The proxy form shall provide spaces for Cooperative members to vote for the duly nominated candidate of their choice, or to abstain, or to designate a proxy who can vote on the member's behalf at the annual meeting.

> The proxy form may provide a space for the member to designate the Board of Directors (acting by majority vote of the Board) to vote on his or her behalf. The results of the Board's vote on ballots so designated (including which Director voted for which candidate, and how many total member ballots were voted per the majority of the Board's determination) shall be announced at the

- 4 -

changes in the proxy vote form available for member use in board elections; create a new rule treating signed, but otherwise blank, proxy forms as abstentions; and require public disclosure of how individual directors voted proxy forms designated for board use. The third proposal addressed director compensation. It sought to add language to REC's bylaws that would require public disclosure of board member compensation and prohibit the board from voting to increase compensation without giving members 60 days' notice of the vote.

In May 2018, the member group received a letter from REC's counsel stating that after "carefully reviewing the proposed Bylaws amendments . . . , the Board has concluded that each of the proposals attempt to usurp the Board's exclusive 'procedure' authority, including procedures relating to Board meetings, elections, and compensation." The letter asserted that "[i]n each case, the Bylaws already vest the Board with the authority to regulate each of these corporate governance duties." Citing Code § 56-231.29(4) as "the applicable state code in this instance," counsel for REC contended that "clearly no other statute or provision of the Bylaws or Articles of Incorporation supersedes this authority to regulate Board procedure."

In May 2019, the member group filed in the circuit court a petition for declaratory and injunctive relief regarding the proposed "alterations" they wanted to make to REC's bylaws. In their petition, the member group rejected REC's characterization of the proposed bylaw changes,

---

annual meeting when the election results are announced and shall also be posted on the Cooperative's website promptly after the meeting.

Proxy forms that are returned signed by the Cooperative member but otherwise blank as to any or all particular board regions on the form shall be treated as a vote to abstain as to the region or regions for which no candidate is selected.

All votes to abstain (including blank proxies deemed a vote to abstain) shall be counted for quorum-determination purposes, but not otherwise counted in electing board candidates.

arguing that each comported with statute and fell within the scope of cooperative members' statutory right to change bylaws. The member group also noted that "the REC Bylaws require[] 'an affirmative vote of not less than two-thirds of the members present in person or by proxy at an annual or special meeting of the members to alter or repeal the Bylaws.'" The member group contended that this supermajority vote requirement was "inconsistent with law and with REC's Articles of Restatement and illegally infringes on the rights of the members to alter or repeal by simple majority vote any Bylaws adopted by the Board." Accordingly, the member group sought a declaratory judgment that the supermajority vote requirement was ultra vires.

REC demurred to those counts of the member group's petition that addressed the supermajority vote requirement. The circuit court sustained the demurrer and dismissed the relevant counts while granting the member group leave to file an amended petition. After filing their amended petition, the member group moved for summary judgment and REC moved for partial summary judgment on the amended petition's counts concerning the supermajority vote requirement.

The circuit court held a hearing on the cross-motions for summary judgment and subsequently issued a letter opinion. In its opinion, the court first addressed the member group's bylaw proposals respecting open board meetings, proxy votes, and director compensation. The court rejected REC's argument that Code § 56-231.29(1)'s grant of power to its board to "adopt or amend" bylaws precluded cooperative members from offering "new bylaws," since the statute gives members the right to "alter or repeal" bylaws; the court found that the "distinction between an amendment and an alteration is without a meaningful difference in the context of the proposed changes to the bylaws" and that "[i]t is beyond argument that the proposals 'alter' the bylaws."

The circuit court also rejected REC's argument that Code § 56-231.29(4), which grants a cooperative's board of directors the power to "make its own rules and regulations as to its

procedure," prohibits bylaw changes which affect the board-established rules and regulations. The court found REC's argument "unpersuas[ive]" because Code § 56-231.29(1) gives to cooperative members "the right to alter or repeal the bylaws," thereby precluding "the Board [from] prevent[ing] a vote on bylaws changes simply on the theory that the proposed alteration or repeal would impinge on the ability of the Board to conduct its business." While the court hypothesized that "there may be proposals which would alter the existing bylaws to the extent that the Board could not continue to execute its statutory role," it found that it could not "evaluate and determine whether the proposed bylaw changes would fundamentally prevent the Board from fulfilling its statutory role without hearing evidence." Accordingly, the court denied the member group's motion for summary judgment with respect to their proposed changes to the bylaws.

The circuit court sustained REC's motion for partial summary judgment regarding the supermajority vote requirement. The court was unconvinced by the member group's argument that the majority vote requirement found in the Nonstock Act applies to entities formed under the Utility Cooperatives Act. Analyzing the statutory language, the court noted that the Nonstock Act provides, in pertinent part, that "[t]he vote of a majority of the votes entitled to be cast by the members present or represented by proxy . . . shall be necessary for the adoption of any matter voted upon by the members, unless a greater proportion is required by this Act or the articles of incorporation." Code § 13.1-849. The Utility Cooperatives Act, in pertinent part, provides that "[a]ll of the provisions" of the Stock Act and Nonstock Act are applicable to cooperatives formed under the Utility Cooperatives Act, insofar as those provisions are "not inconsistent with" the Utility Cooperatives Act. Code § 56-231.19. The court determined that "the broad powers given to the Board by the Utilit[y] Cooperative[s] Act and particularly subparagraph (1) of [Code §] 56-231.29 cannot be reconciled with" the majority vote requirement found in the

Nonstock Act. Accordingly, the court found that "[b]ecause they cannot be reconciled, they are 'inconsistent,'" and thus the Nonstock Act's majority vote requirement does not apply to entities formed under the Utility Cooperatives Act.

Following a bench trial addressing the proposed bylaw changes, the circuit court found that the member group's proposed change regarding open board meetings "fail[ed]," as the new bylaw language would have prevented the board from meeting under emergency circumstances. Specifically, the court found that the proposed language would "fundamentally prevent the board from fulfilling its statutory role as an electrical cooperative." Thus, in making its decision, the court applied a standard it had earlier elaborated of "whether the proposed bylaw changes would fundamentally prevent the board from fulfilling its statutory role." The court also acknowledged, but rejected, a lower standard advanced by REC that would have asked whether the proposed bylaw language would "interfere with" or "impinge on the ability of the board to conduct [its] business." The court further found that it was unnecessary to address the two remaining proposed bylaw revisions, since the revisions had been presented by the member group as a "slate"; the court reasoned that "[i]f it's a slate it has to be considered as a total," and "if any one of them is defective, they're all defective."

The member group moved for suspension of the circuit court's judgment and for partial reconsideration, asking the court to issue a declaratory judgment with respect to the proposed bylaw revisions concerning proxy votes and director compensation. The court granted the member group's motion and conducted an additional hearing, after which it found that the member group had raised an actual controversy respecting each of the bylaw proposals and granted the motion for partial reconsideration.

An additional hearing on the two remaining proposed bylaw revisions followed. In a subsequent letter opinion, the circuit court denied the member group's requested declaratory

judgment regarding the proxy vote proposal but granted the request regarding the director compensation proposal. With respect to the proxy vote proposal, the court reasoned that because "the Board is responsible for however it chooses to designate a proxy vote once such proxy is delegated to the Board," that process "is entirely internal." Thus, "[h]owever the Board chooses to arrive at that ultimate vote is an internal process, which belongs to the Board by statute. Cooperative members cannot handcuff the Board in that logistical decision." Concerning the director compensation proposal, the court observed that "REC was unable to offer any example as to how this [compensation] amendment would affect its ability to operate," and found that the "proposal does not fundamentally prevent the Board from fulfilling its statutory role in any way"; the board "would continue doing exactly what it was doing before" and "would simply have to share . . . information."

This appeal followed.

## II. ANALYSIS

### A. The Supermajority Vote Requirement

In its first two assignments of error, the member group argues that the circuit court erred by entering summary judgment for REC regarding the bylaws' supermajority requirement for member votes to "alter or repeal" bylaws. Code § 56-231.29(1). The member group contends that contrary to the court's finding, there is no inconsistency between the Nonstock Act, which provides for a majority vote threshold "for the adoption of any matter voted upon by the members," Code § 13.1-849, and the Utility Cooperatives Act, to which "[a]ll of the provisions of the . . . Nonstock . . . Act" apply, "insofar as [they are] not inconsistent with" the Utility Cooperatives Act, Code § 56-231.19. Accordingly, the member group argues, the Nonstock Act's simple majority vote provision should apply to REC members' votes to alter or repeal REC bylaws.

"We review the trial court's grant of summary judgment de novo. We also review a trial court's construction of statutory provisions de novo." *VACORP v. Young*, 298 Va. 490, 494 (2020) (citation omitted).

"The Virginia Supreme Court has long held that 'when analyzing a statute, we must assume that "the legislature chose, with care, the words it used . . . and we are bound by those words as we [examine] the statute."'" *Eley v. Commonwealth*, 70 Va. App. 158, 163 (2019) (alterations in original) (quoting *Doulgerakis v. Commonwealth*, 61 Va. App. 417, 420 (1992)). "[C]ourts 'are required to ascertain and give effect to the intention of the legislature, which is usually self-evident from the statutory language.'" *Id.* (alteration in original) (quoting *Armstead v. Commonwealth*, 55 Va. App. 354, 360 (2009)). "To best ascertain that intent, when the language of a statute is unambiguous, we are bound by the plain meaning of that language." *City of Hampton v. Williamson*, __ Va. __, __ (June 8, 2023) (quoting *Blake v. Commonwealth*, 288 Va. 375, 381 (2014)). And "[a]lthough our focus is generally on the plain meaning of unambiguous statutory language, we must also consider that language in the context in which it is used." *Id.* at __ (quoting *Potter v. BFK, Inc.*, 300 Va. 177, 182 (2021)). Statutory language is ambiguous only "when it may be understood in more than one way, or simultaneously refers to two or more things. If language is difficult to comprehend, is of doubtful import, or lacks clearness and definiteness, an ambiguity exists." *Williams v. Commonwealth*, 61 Va. App. 1, 9 (2012) (quoting *Lee-Warren v. Sch. Bd. of Cumberland Cnty.*, 241 Va. 442, 445 (1991)). Thus, "that which is plain needs no interpretation." *Id.* (quoting *Winston v. City of Richmond*, 196 Va. 403, 408 (1954)).

We begin by noting that the relevant provision of the Utility Cooperatives Act, Code § 56-231.19, is unambiguous in providing that "[a]ll of the provisions" of the Nonstock Act are applicable to an entity formed under the Utility Cooperatives Act, "insofar as [they are] not

inconsistent with" the latter Act. Based on the plain language of this statutory provision, it is clear that the General Assembly intended the Nonstock Act to serve a "gap-filling" role, establishing provisions for entities formed under the Utility Cooperatives Act where the latter Act is silent, and thus provisions of the Nonstock Act are "not inconsistent." Likewise, the provision of the Nonstock Act relevant here, Code § 13.1-849, is unambiguous in specifying that only a simple majority vote "shall be necessary for the adoption of any matter voted upon by . . . members, unless a greater proportion is required by this Act or the [relevant] articles of incorporation." Thus, if the Utility Cooperatives Act and REC's articles of incorporation are silent on voting requirements for member votes to alter or repeal bylaws, the Nonstock Act's provision for simple majority votes will apply.

A review of the Utility Cooperatives Act and REC's articles of incorporation demonstrates that both are silent on the proportion of member votes required to sustain a vote to alter or repeal bylaws. Neither document, in its plain language, expressly or specifically provides such a member vote threshold. Accordingly, because the Utility Cooperatives Act and REC's articles of incorporation are silent on this issue, we hold that the Nonstock Act's simple majority vote provision is not inconsistent with the Utility Cooperatives Act or REC's articles of incorporation, and it applies. It necessarily follows that the circuit court erred in finding an inconsistency, and in entering summary judgment for REC on the issue of its supermajority member vote bylaw.

REC argues that this silence is irrelevant and that there is an inconsistency between the Utility Cooperatives Act's grant of power to REC's Board and the Nonstock Act's imposition of a majority vote requirement. REC maintains that a majority vote requirement is incompatible with the Utility Cooperatives Act's grant to boards of the "power to do all things necessary or incidental," including, it argues, the enactment of a bylaw imposing a supermajority vote

- 11 -

requirement. *See* Code § 56-231.29(1) (granting to boards the power "to adopt and amend bylaws for the management and regulation of the affairs of the cooperative"). REC also notes that, under Code § 56-231.36, the Utility Cooperatives Act "is to be liberally construed" and that "any provisions of other laws in conflict with the provisions of [the Utility Cooperatives Act] shall not apply to cooperatives operating hereunder, and "[a]ny object, purpose, power, manner, method or thing which is not specifically prohibited is permitted." Therefore, REC argues, the simple majority vote provision of the Nonstock Act in Code § 13.1-849 cannot apply here and does not bind REC's Board, since "nothing" in the Utility Cooperatives Act "specifically prohibit[ed] the Board from adopting such a [supermajority vote] provision."

But to interpret the Utility Cooperatives Act in the way REC urges would impose virtually no limiting principle on the conduct of REC's Board; if the board had the power to do anything not specifically prohibited by the Utility Cooperatives Act, and any and all such board actions were by definition consistent with the Utility Cooperatives Act, then there could never be a board action that was impermissible. Instead, we must seek to harmonize the interpretation of the relevant statutory provisions to avoid such a result. *See Boynton v. Kilgore*, 271 Va. 220, 229 (2006) ("When faced with apparently conflicting statutes, this Court applies 'a well-established principle of statutory construction. If possible, we must harmonize . . . [the] statutes to give effect to both.'" (quoting *Phipps v. Liddle*, 267 Va. 344, 346 (2004))); *Zhou v. Zhou*, 38 Va. App. 126, 137 (2002) (noting that when multiple provisions of a statutory scheme "'suggest a potential for conflict or inconsistency,' we must construe such 'provisions so as to reconcile them'" (quoting *Herrel v. Commonwealth*, 28 Va. App. 579, 585 (1998))); *Commonwealth v. Doe*, 278 Va. 223, 230 (2009) ("[W]e must avoid any literal interpretation of a statute that would lead to absurd results.").

Accordingly, we must read Code § 56-231.36, which provides that "[a]ny object, purpose, power, manner, method or thing . . . not specifically prohibited is permitted," within the context of Code § 56-231.19, which requires that the Nonstock Act's provisions be applied to entities formed under the Utility Cooperatives Act unless they are inconsistent with provisions of the latter Act. *See Commonwealth v. Wallace*, 29 Va. App. 228, 234 (2004) ("The doctrine of *pari materia* teaches that 'statutes are not to be considered as isolated fragments of law, but as a whole, or as parts of a great, connected homogenous system, or a simple and complete statutory arrangement." (quoting *Moreno v. Moreno*, 24 Va. App. 190, 198 (1997))). Read in this way, Code § 56-231.19 limits the scope of the objects, purposes, powers, manners, and things contemplated by Code § 56-231.36 to those not covered by specific provisions of the Nonstock Act, while permitting the pursuit of such objects, purposes, powers, manners, and things "not specifically prohibited" by that Act. Such a construction gives full effect to both statutes. *See Zhou*, 38 Va. App. at 137 (noting that such a reconciliatory construction gives full effect to the expressed legislative intent).

Returning to REC's argument that a majority vote requirement is inconsistent with Code § 56-231.29—because the statute gives REC's Board the "power to do all things necessary and incidental in conducting the [cooperative's] business," including enacting bylaws concerning the "management and regulation of the [cooperative's] affairs"—this grant of power does not explicitly preclude a majority vote requirement affecting only the conduct of member votes to alter or repeal bylaws. Such a requirement does not prevent a board from conducting the business of the cooperative or preclude a board from adopting or amending bylaws for the management and regulation of the cooperative's affairs. That is, the simple majority vote provision of the Nonstock Act and the generalized grant of power elaborated under Code § 56-231.29 of the Utility Cooperatives Act are not inconsistent. *See Inconsistent*, *Black's Law*

- 13 -

*Dictionary* (11th ed. 2019) ("Lacking agreement among parts."). Although application of the Nonstock Act's majority vote requirement may somewhat narrow the scope of a board's power, this narrowing does not rise to the level of creating a statutory inconsistency, since the very purpose of Code § 56-231.19 is to apply specific provisions of the Nonstock Act to entities formed under the Utility Cooperatives Act, thus necessarily limiting those entities. Stated differently, if such narrowing were sufficient to establish an inconsistency between the Nonstock Act and the Utility Cooperatives Act, then the Nonstock Act would never apply to entities formed under the Utility Cooperatives Act, rendering Code § 56-231.19 a nullity. Instead, we hold that an inconsistency arises only where the Nonstock Act and the Utility Cooperatives Act, in their plain terms, are in contradiction. This interpretation best comports with the legislature's intent to apply the Nonstock Act to entities formed under the Utility Cooperatives Act where the two statutory regimes are not inconsistent.[6]

Because the Utility Cooperatives Act is silent on the proportion of member votes required to alter or repeal bylaws, and because the simple majority vote provision of the Nonstock Act is not inconsistent with the provisions of the Utility Cooperatives Act, the Nonstock Act's voting provision applies. Thus, the circuit court erred in entering summary judgment for REC upholding REC's supermajority vote bylaw, and accordingly, that ruling of the circuit court is reversed.[7]

---

[6] We note that further undermining REC's argument that the statutory regimes are inconsistent—at least with respect to vote proportion requirements—is the fact that the Nonstock Act does not preclude a cooperative from employing a supermajority vote rule. Rather, it simply provides that any such rule must be authorized by the cooperative's articles of incorporation. *See* Code § 13.1-849 (providing that only a simple majority vote is "necessary for the adoption of any matter voted upon by . . . members, unless a greater proportion is required by this Act *or the articles of incorporation*" (emphasis added)).

[7] Because of our determination that the Nonstock Act's simple majority vote provision applies to REC members' votes to alter or repeal REC bylaws, we need not address the member

B.  The Bylaw Proposals

In its final assignment of error, the member group argues that the circuit court erred by ruling in favor of REC with respect to its proxy vote bylaw proposal.  The member group contends that the court erred because "the board's authority to make procedural rules" pursuant to Code § 56-231.29(4) "in no way limits the [members'] authority to adopt bylaws with some incidental effect on the board's procedure."

REC assigns several cross-errors to the circuit court which address the same broad issue raised by the member group: the relationship between cooperative members and REC's Board with respect to the statutory powers and roles granted to each by Code § 56-231.29.  REC contends, first, that the court erred in finding that the member group's proposed bylaws exceeded the members' authority to alter or repeal bylaws adopted and amended by the board based on the court's conclusion that in the context of the proposed bylaw changes, "'the distinction between an amendment and an alteration is without a meaningful difference.'"  Second, REC contends that the court erred in concluding that the subparagraphs of Code § 56-231.29 "should not be read independently and co-equally, with subparagraph (4) prohibiting bylaw changes that interfere with a . . . board's authority to make its own rules and regulations as to its procedure as part of [its] 'power to do all things necessary or incidental'" to conducting REC's business.  Third, REC maintains, in a related cross-assignment of error, that the court erred in failing to rule

group's additional arguments respecting the supermajority vote requirement: that by imposing the requirement, the board exceeded its bylaw authority under the Utility Cooperatives Act because the board's power is "'*subject to*' the members' superior right to police the bylaws" and that pursuant to Code § 56-231.29(1), the scope of the board's authority to make bylaw provisions is limited to certain "specific matters . . . none of which encompass the voting threshold for member-approval of a bylaw change."  *See Commonwealth v. Swann*, 290 Va. 194, 196 (2015) (noting that "[t]he doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))); *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (noting that "[t]he 'narrowest' answer to a legal question is the one affecting the least number of cases").

that each of the proposed bylaws "interferes with the authority of REC's board of directors under . . . Code § 56-231.29(4) to make its own rules and regulations as to its procedure." Lastly, REC argues that the court erred in granting the member group summary judgment on its proposed bylaw change requiring disclosure of board member compensation and notice of votes to increase compensation, because the change would "interfere[]" with the board's authority under Code § 56-231.29(4) to fix compensation and make its own procedural rules and regulations.

Where an issue "turns entirely upon a question of law, we review the circuit court's decision de novo." *Heron v. Transportation Cas. Ins. Co.*, 274 Va. 534, 538 (2007). "This Court also reviews de novo the application of a statute to the undisputed, stipulated facts in a declaratory judgment action." *City of Danville v. Garrett*, 294 Va. 36, 40 (2017). However, we "defer[] to the circuit court's findings of fact and 'view[] the facts in the light most favorable to' . . . the prevailing party." *Commonwealth ex rel. Fair Hous. Bd. v. Windsor Plaza Condo. Ass'n*, 289 Va. 34, 59 (2014) (quoting *Chalifoux v. Radiology Assocs. of Richmond, Inc.*, 281 Va. 690, 696 (2011)). "[W]e review the trial court's application of the law to facts de novo." *Id.* Also of relevance here, "[s]tatutory interpretation is a question of law we review *de novo*." *Jacobs v. Wilcoxson*, 71 Va. App. 521, 534 (2020).

Our analysis of the parties' arguments requires us to interpret the statutory language of the Utility Cooperatives Act, most particularly the language of Code § 56-231.29. "The primary objective of statutory [interpretation] is to determine legislative intent. In determining that intent, words are to be given their ordinary meaning, unless it is apparent that the legislative intent is otherwise." *Phelps v. Commonwealth*, 275 Va. 139, 142 (2008) (citations omitted). And "[a]n undefined term in a statute may be defined using its standard dictionary definition." *Eberhardt v. Commonwealth*, 74 Va. App. 23, 32 (2021). "If . . . statutory language 'is

unambiguous,' [a] reviewing court is 'bound by the plain meaning of that language.'" *Dep't of Tax'n v. 1887 Holdings, Inc.*, 77 Va. App. 653, 658 (2023) (quoting *Va. Elec. & Power Co. v. St. Corp. Comm'n*, 300 Va. 153, 161 (2021)). "This maxim controls statutory construction unless 'applying the plain language would lead to an absurd result.'" *Id.* at 659 (quoting *JSR Mech., Inc. v. Aireco Supply, Inc.*, 291 Va. 377, 383 (2016)). "A reviewing court assumes 'that the legislature chose, with care, the specific words of [a] statute,'" *id.* at 660 (quoting *Va. Elec. & Power Co.*, 300 Va. at 163), and "[a] court may not 'add to the words' of a statute," *Berglund Chevrolet, Inc. v. Va. Dep't of Motor Vehicles*, 71 Va. App. 747, 753 (2020) (quoting *Baker v. Commonwealth*, 278 Va. 656, 660 (2009)). Thus, "we may not construe [a] statute's plain language in a manner that amounts to holding that the General Assembly meant to add a requirement to [a] statute that it did not actually express." *Vaughn, Inc. v. Beck*, 262 Va. 673, 679 (2001). And "when the General Assembly has used words of a plain and definite import, courts cannot place on them a construction that amounts to holding that the General Assembly meant something other than that which it actually expressed." *Id.* at 677.

Additionally, "[i]n considering the meaning of particular language in context, '[w]e adhere to rules of statutory construction that discourage any interpretation of a statute that would render any part of it useless, redundant or absurd. Instead, we seek to read statutory language so as to give effect to every word.'" *Tanner v. Commonwealth*, 72 Va. App. 86, 101 (2020) (second alteration in original) (quoting *Spratley v. Commonwealth*, 298 Va. 187, 195-96 (2019)). But "[w]here multiple sections of a statute are inconsistent or ambiguous when read together, courts 'are required to harmonize any ambiguity or inconsistency in the statute to give effect to the General Assembly's intent without usurping "the legislature's right to write statutes."'" *Id.* (alteration in original) (quoting *Blake*, 288 Va. at 383). "The proper course is 'to search out and follow the true intent of the legislature, and to adopt that sense of the words which harmonizes

best with the context, and promotes in the fullest manner the apparent policy and objects of the legislature.'" *Jacobs*, 71 Va. App. at 524 (quoting *Smith v. Commonwealth*, 66 Va. App. 382, 389 (2016)).

      1.  Construction of Code § 56-231.29(1): "adopt and amend" vs. "alter or repeal"

We turn first to the construction of subsection (1) of Code § 56-231.29 and examine its assignment of powers and roles to cooperative members and boards of directors. Code § 56-231.29(1) provides, in pertinent part, that a cooperative's board shall have the power "to *adopt and amend* bylaws for the management and regulation of the affairs of the cooperative, subject, however, to the right of the members to *alter or repeal* such bylaws." (Emphases added). Here, the circuit court found that "[t]he distinction between an amendment and an alteration is without a meaningful difference in the context of the [member group's] proposed changes to [REC's] bylaws," and thus considered the proposed changes only in light of whether their effects would "fundamentally prevent" REC's Board from "fulfilling" its statutory duties and role. We conclude that this analytical approach was in error and that instead, the court should have considered whether the member group's proposed bylaw changes were in fact new bylaws, or merely alterations to extant bylaws.

The plain language of Code § 56-231.29(1) makes clear that a cooperative board is empowered "to adopt . . . bylaws." To "adopt" is to "choose, or select . . . and put into effective operation; as in the case of a constitution, constitutional amendment, ordinance, . . . or by-law."[8] *Adopt*, *Black's Law Dictionary* (6th ed. 1990) (hereinafter "*Black's*"); *cf. Russell v. Va. Bd. of Agric. & Consumer Servs.*, 59 Va. App. 86, 91 (2011) (discussing when, exactly, "the point of 'adoption' occurs when an agency *creates* a regulation" (emphasis added)). A board is also empowered by the statute to amend its previously adopted bylaws. Additional plain language in

--------

[8] The statutory terms discussed here are not defined by the Utility Cooperatives Act.

Code § 56-231.29(1) vests cooperative members with their own collective "right" to "alter or repeal . . . bylaws." That is, members may "modify," "vary in some degree," or "change some of the . . . ingredients or details" of bylaws, "without substituting an entirely new thing," *Alter*, *Black's*, *supra*, and they may "[a]brogat[e]" or "rescind" bylaws, *Repeal*, *Black's Law Dictionary* (11th ed. 2019).

Thus, under the plain language of the statute, it is a cooperative's board that is vested with the generative power to select, create, or otherwise put into operation bylaws for the cooperative. And the statute's specific allocation to the board of the power to "adopt" bylaws, while omitting from the succeeding clause any parallel provision for cooperative members to have the power to "adopt" bylaws, necessarily excludes members from this generative power. *See Fines v. Rappahannock Area Cmty. Servs. Bd.*, 301 Va. 305, 317 (2022) ("As this Court has repeatedly explained, 'when the General Assembly includes specific language in one section of a statute, but omits that language from another section of the statute, we must presume that the exclusion of the language was intentional.'" (quoting *Halifax Corp. v. First Union Nat'l Bank*, 262 Va. 91, 100 (2001))); *Wright v. Commonwealth*, 49 Va. App. 312, 318 (2007) ("We . . . heed the fundamental principle of statutory construction *expressio unius est exclusio alterius*, or 'where a statute speaks in specific terms, an implication arises that omitted terms were not intended to be included within [its] scope.'" (quoting *Conkling v. Commonwealth*, 45 Va. App. 518, 522 (2005))). Accordingly, cooperative members may not "select . . . and put into effective operation" bylaws, as that power is reserved exclusively to the cooperative's board. *Adopt*, *Black's*, *supra*.

It is clear from the plain language of Code § 56-231.29(1) that only a cooperative's board may generate new bylaws, while members are limited to their right to alter or repeal those bylaws. Accordingly, we hold that the circuit court erred in evaluating the validity of the

proposed bylaw changes solely in light of their effects on the performance of REC's Board of its statutorily authorized roles, without first considering the threshold question of whether the proposals constituted new bylaws or otherwise exceeded the scope of members' statutory right to "alter or repeal" existing bylaws.[9]

### 2. The Relationship Between Subsections (1) and (4) of Code § 56-231.29

We turn next to an analysis of how subsection (4) of Code § 56-231.29 relates to subsection (1) of the statute. Code § 56-231.29(4) provides, in pertinent part, that a utility cooperative's board of directors "shall have power to do all things necessary or incidental in conducting the business of the cooperative, including, but not limited to the power . . . [t]o make its own rules and regulations as to its procedure." REC argues that subsection (1) of the statute, construed supra, and subsection (4) of the statute should be read "independently and co-equally" and that the member group's proposed bylaw changes under subsection (1) would have impermissibly interfered with the board's broad and extensive authority under subsection (4). In essence, REC contends that the language of subsection (4) grants its board near unlimited powers to govern itself and conduct its affairs.

In conducting our analysis, we are cognizant that well-established canons of statutory construction provide that "[s]ince each subsection of Code § [56-231.29] addresses the same subject matter, . . . they must be construed and considered together." *Ducharme v. Commonwealth*, 70 Va. App. 668, 677 (2019). "This requires that '[t]he literal meaning of separate provisions, if in apparent conflict[,] . . . must yield to a reasonable and fair interpretation to be gathered from the context, the subject matter, and the reason and spirit of the law.'" *Id.* (alterations in original) (quoting *Colbert v. Commonwealth*, 47 Va. App. 390, 395 (2006)).

---

[9] Our resolution of this issue resolves REC's assigned cross-error, which alleges that the circuit court erred "by adopting the standard . . . that a proposed bylaw must 'fundamentally prevent the Board from fulfilling its statutory role' in order to be invalid."

- 20 -

Stated differently, "in construing the intent of the legislature, ['w]e do not isolate particular words or phrases but rather examine a statute in its entirety.' 'We have a "duty to interpret the several parts of a statute as a consistent and harmonious whole so as to effectuate the legislative goal."'" *Id.* (alteration in original) (citation omitted) (quoting *Colbert*, 47 Va. App. at 395).

The question here is whether the statutory grant of authority to REC's Board in Code § 56-231.29(4) allows for members to propose bylaw changes that would affect the board's current procedures—including, specifically relevant here, procedures for voting member proxies. To this question, the circuit court answered "no," since Code § 56-231.29(4) gives REC's Board the "power . . . [t]o make its own rules and regulations as to its procedure," and the court found that the board's proxy vote procedures were "entirely internal" to the board; thus, the "[c]ooperative members cannot handcuff the Board" in deciding how to vote member proxies.

But the circuit court's construction of Code § 56-231.29(4) is not in harmony with subsection (1)'s provisions. That subsection provides that "[t]he bylaws of a cooperative may make provisions" regarding "the number, times and *manner of choosing*, qualifications, terms of office, official designations, powers, duties and compensation of its officers and directors." (Emphasis added). *See Manner*, *Websters Third New International Dictionary Unabridged* (2021) (defining "manner," in pertinent part, to mean "the mode or method in which something is done or happens"; "a mode of procedure or way of acting"). Accordingly, although the statute in subsection (4) empowers REC's Board to "make its own rules and regulations as to its procedure," it also envisages bylaws governing the manner by which directors are chosen. The statute, in subsection (1), thus permits bylaws affecting the procedures the board currently uses when voting member proxies. To resolve this apparent tension, subsection (4) must be read to give boards the power to make their own rules and regulations as to their procedures under or pursuant to the existing framework of bylaws. That is, bylaws and other authorities, such as a

- 21 -

cooperative's articles of incorporation, form the context in which boards exercise their power to make their own rules and regulations.

We also note that REC's preferred construction of Code § 56-231.29 would yield an absurd result by rendering some of the plain language of subsection (1) inoperable or mere surplusage. REC argues that because the subsections of the statute must be read "independently and co-equally," "the members' right to 'alter or repeal' bylaws under subparagraph (1) . . . [does not] trump[] the Board's power under subparagraph (4)." But as discussed supra, the plain language of subsection (1) makes clear that a board's power to adopt and amend bylaws is subject to members' right to alter and repeal bylaws—including, inter alia, bylaws respecting the powers of the cooperative's board of directors.[10]

### 3. Proxy Voting and Board Member Compensation

Based upon the above analysis of the relevant statutory scheme, we conclude that the circuit court attained the right result, but for the wrong reasons, when it denied the member group's request for declaratory judgment on the proxy vote bylaw changes and granted the member group's request for declaratory judgment on the board compensation bylaw changes.

"The 'right result for the wrong reason' doctrine has been a part of the law of Virginia for well over a century." *Spinner v. Commonwealth*, 297 Va. 384, 391 (2019). "We have long said that '[w]e do not hesitate, in a proper case, where the correct conclusion has been reached but the wrong reason given, to sustain the result and assign the right ground.'" *Carolino v. Commonwealth*, 79 Va. App. 170, 189 (2023) (en banc) (alteration in original) (quoting *Banks v. Commonwealth*, 280 Va. 612, 617 (2010)); *see also Schultz v. Schultz*, 51 Va. (10 Gratt.) 358,

---

[10] We further note that while REC is correct that the directorial powers enumerated in Code § 56-231.29 are non-exhaustive and the sweep of such powers is necessarily broad, as discussed supra, those powers are constrained to the extent that a board may not transgress the bounds set in its cooperative's bylaws.

384 (1853) ("[I]t is the settled rule that how erroneous soever may be the reasons of the court for its judgment upon the face of the judgment itself, if the judgment be right, it will not be disturbed on account of the reasons."). Application of the doctrine is proper where, as here, "the record demonstrates that all evidence necessary to the alternative ground for affirmance was before the circuit court." *Carolino*, 79 Va. App. at 190 (quoting *Banks*, 280 Va. at 618).

Here, the circuit court denied the member group's request for declaratory judgment on its proposed changes to REC's bylaw governing how the board votes members' proxy forms. The proposed changes would have altered the proxy vote form available for member use in board elections; created a new rule requiring the board to treat blank, but signed, proxy forms as abstentions; and required public disclosure of how the individual directors voted proxy forms designated for board use. The circuit court concluded that the proposed changes "fail[ed]" because they impinged on the board's broad grant of statutory authority to determine its own procedures, since how the board "chooses to designate a proxy vote once such proxy vote is delegated to [it]" was an "entirely internal" process. Based on our statutory analysis, supra, we conclude that the circuit court erred in this analysis, because the court did not first consider whether the changes constituted a new bylaw or otherwise exceeded the scope of members' power to alter or repeal bylaws.

As noted above, Code § 56-231.29 grants utility cooperative members the "right . . . to alter or repeal . . . bylaws." That right empowers members to "modify," "vary in some degree," or "change some of the . . . ingredients or details" of bylaws, "without substituting an entirely new thing." *Alter*, *Black's*, *supra*. Here, among other things, the member group's proposed language would have changed REC's bylaw governing proxy votes by incorporating a new rule requiring the board to treat blank, but signed, proxy forms as abstentions. We hold that such a novel substantive rule, incorporated into REC's extant bylaw governing proxy votes, would have

exceeded members' power to alter the bylaw; that is, the new rule would have gone beyond the members' authorization to "vary" the bylaw "in some degree," or to "change some of [its] . . . ingredients or details," and would have "substitut[ed] an entirely new thing" for the extant provision governing how board members vote member proxy forms.[11]  *Id.*  Accordingly, when the circuit court denied the member group's request for declaratory judgment on its proposed changes to REC's proxy vote bylaw, the court imposed the right result, but for an erroneous reason.  On this basis, we affirm the circuit court's denial of declaratory judgment on the proxy vote bylaw changes.

With respect to the member group's proposed changes to REC's bylaws governing director compensation, the circuit court granted the member group declaratory judgment upon finding that the "proposal does not fundamentally prevent the Board from fulfilling its statutory role in any way."   As discussed supra, it was error for the circuit court to base its analysis of the proposed bylaw changes solely in light of their effects on the board's performance of its statutorily authorized roles, without first considering whether the proposals constituted new bylaws or otherwise exceeded the scope of members' right to "alter or repeal" existing bylaws.  Here, the proposed changes would have added language to REC's extant bylaws requiring public disclosure of board compensation and prohibiting the board from voting to increase

---

[11] Supporting our conclusion that the member group's proposed proxy vote bylaw change was a substantive new rule, the adoption of which would have exceeded members' statutory power to alter extant bylaws, is the language used by the member group itself to characterize the nature of its proposed change.  On brief, the member group argues that in part, the circuit court erred in its declaratory judgment ruling because the board's authority pursuant to Code § 56-231.29(4) "in no way limits the [members'] authority to *adopt* bylaws with some incidental effect on the board's procedure." (Emphasis added).  As noted supra, subsection (1) of Code § 56-231.29 makes clear that the power to adopt bylaws is vested solely in a cooperative's board, not its broad membership.  Elsewhere on brief, the member group asserts that "members . . . may *enact a bylaw* that controls—even 'handcuffs'—the board's procedure when it acts as the proxy for a member–voter." (Emphasis added).  Thus, the member group's own conception of the nature of its proposed proxy vote bylaw change was that the proposal represented more than a mere alteration of an existing bylaw.

compensation without giving members 60 days' notice of the vote. We hold that such informational changes were within the scope of the members' statutory authorization to "vary in some degree," or "change some of the . . . ingredients or details" of the extant bylaw, without "substituting an entirely new thing" for that bylaw. *Id.* As noted by the circuit court, adding the proposed language to the extant bylaw "would simply have [required the board] to share . . . information."

Further relevant here, the circuit court found that the proposed bylaw change would not fundamentally impact the board's performance of its statutory role. As discussed supra, this finding was ultimately premised on an erroneous determination that there was no meaningful distinction between "amend[ing]" and "alter[ing]" a bylaw. Regardless, we hold that the circuit court was not wrong in its finding that, although based on erroneous underlying premises, comports with our harmonized reading of Code § 56-231.29(1) and (4). Under our harmonized interpretation of that statute's subsections, members are permitted to propose bylaw changes that have some effect on utility cooperative board procedures. Thus, when the circuit court granted the member group's request for declaratory judgment on its proposed changes to REC's Board compensation bylaw, the court reached the right result, albeit based on erroneous analysis and reasoning. On this basis, we affirm the circuit court's ruling granting the member group declaratory judgment on their proxy vote bylaw changes.

Because we hold that the circuit court, in denying declaratory judgment on the proxy vote issue and granting declaratory judgment on the board member compensation issue, reached the right result for the wrong reasons, and because the record supports alternative grounds for the court's rulings, we affirm those rulings.

### III. CONCLUSION

For the foregoing reasons, we reverse the circuit court's ruling entering summary judgment for REC on REC's supermajority vote requirement. Additionally, we affirm the circuit court's declaratory judgment rulings on the member groups' proxy vote bylaw proposals and board member compensation bylaw proposals. This case is remanded for further proceedings consistent with this opinion.

*Affirmed in part, reversed in part, and remanded.*